FILED
2008 AUG -8 PM 12:22

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, ) Magistrate Case No. '08 MJ 2463
)
Plaintiff, )
)
v. ) COMPLAINT FOR VIOLATION OF:
)
Ever MARTINEZ-Zaragoza, ) Title 8 U.S.C., Sec. 1324 (a)(2)(B)(iii)
) Bringing in Illegal Aliens Without
) Presentation
)
Defendant(s) )
)

The undersigned complainant, being duly sworn, states:

On or about **August 6, 2008,** within the Southern District of California, defendant **Ever MARTINEZ-Zaragoza,** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Eduardo MOLINERO-Pomatz, Cosme OROS-Oros, and Jaime MOLINERO-Pomatz,** had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS <u>8th,</u> DAY OF <u>August, 2008.</u>

Louisa S. Porter
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
Ever MARTINEZ-Zaragoza

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Eduardo MOLINA-Pomatz, Cosme OROS-Oros, and Jaime MOLINERO-Pomatz** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On August 6, 2008, Border Patrol Agent James Rhodes, was patrolling in area near Jamul, California. This area is approximately twelve miles east of the Otay Mesa, California Port of Entry and approximately six miles north of the United States/Mexico international boundary. At approximately 1:30 a.m., Agent Rhodes responded to seismic intrusion device activation in a remote area just northeast of the Highway 94 Border Patrol Checkpoint in Jamul, California. Soon after the sensor activation, an infrared scope operator observed a group of suspected illegal aliens. The only way to get to the area is on foot.

Agent Rhodes parked his vehicle and walked north on a small foot trail. The infrared scope operator directed Agent Rhodes to where he last observed the group walking. Agent Rhodes then found six individuals hiding in the brush. Agent Rhodes identified himself as a United States Border Patrol Agent and performed immigration interviews on all six individuals. All six individuals, including an individual later identified as **Ever MARTINEZ-Zaragoza,** admitted to being citizens and nationals of Mexico without any immigration documents allowing them to enter or remain in the United States legally. At approximately 2:00 a.m., all six individuals were then arrested for illegal entry and transported to the Brown Field Border Patrol Station for processing.

Records checks revealed MARTINEZ was previously arrested by Border Patrol Agents on July 23, 2008, as a passenger in a 1997 GMC Safari van bearing California license plates 5CEB147. In regards to that previous event, MARTINEZ was identified as a foot guide for that group after he had already been voluntarily returned to Mexico.

Agent M. Hansen, and SIG Senior Patrol Agents Francisco Rivera and Mathew Bergin responded to the Brown Field Station and took custody of MARTINEZ and the five illegal aliens arrested with him. Upon arriving at the Brown Field Station, and at approximately 12:20 p.m., Agent Rivera advised MARTINEZ that he was now under arrest for suspicion of alien smuggling and immediately advised him of his Miranda rights. MARTINEZ said that he understood his Miranda rights and agreed to answer questions without the presence of an attorney.

MARTINEZ and the other five individuals were transported to the El Cajon Border Patrol Station for processing. All six individuals had already been entered into DHS computer processing systems. A review of the results revealed that MARTINEZ had no less than thirteen prior arrests by the Border Patrol.

**CONTINUATION OF COMPLAINT:**
**Ever MARTINEZ-Zaragoza**

On August 6, 2008, at approximately 2:30 p.m., Border Patrol Agent Francisco Rivera advised MARTINEZ that his I-826 administrative rights no longer applied to him and that criminal prosecution was now being contemplated. MARTINEZ said he understood. Agent Rivera presented MARTINEZ with an I-826 revocation form, which MARTINEZ read, stated he understood and signed.

DEFENDANT STATEMENT: Ever MARTINEZ-Zaragoza

MARTINEZ was re-advised of his Miranda rights. MARTINEZ stated that he understood his rights, and agreed to provide a statement without the presence or aid of an attorney.

MARTINEZ stated that he is a Mexican citizen without any immigration documents that would allow him to enter or remain in the United States. MARTINEZ admitted that he has been apprehended by the United States Border Patrol approximately 15 times in the last four or five years.

MARTINEZ stated that he crosses the border illegally to go to Santa Ana, California, to work. He claimed he has worked in Santa Ana in various jobs including restaurant and factory work. MARTINEZ goes back to Mexico often to visit his family. Each time MARTINEZ crosses back into the United States, he pays a smuggling fee of $1,500.00 (USD). MARTINEZ offered no explanation as to where he obtains the money for paying $1,500.00 (USD) every month or every other month.

MARTINEZ claimed that he crossed illegally into the United States last night and that he had no money to pay the smuggling fee.

**MATERIAL WITNESSES STATEMENTS:**

Material witnesses **Eduardo MOLINERO-Pomatz, Cosme OROS-Oros,** and **Jaime MOLINERO-Pomatz,** agree in summary that they are citizens and nationals of Mexico illegally present in the United States. They stated they do not have any immigration documents that would allow them to enter or remain in the United States legally. The Material witnesses stated that they were to pay $1,200.00 to $1,400.00 (USD) to be smuggled into the United States. Material Witness Eduardo MOLINERO-Pomatz stated his brother made the smuggling arrangements for him. All three Material witness were shown a photographic line up and were able identify the defendant **Ever MARTINEZ-Zaragoza** as the footguide.
Material Witness Summary Statements:

**CONTINUATION OF COMPLAINT:**
**Ever MARTINEZ-Zaragoza**



At approximately 6:46 p.m., MARTINEZ was re-interviewed in order to confront him with information obtained from the material witnesses. Agent Rivera reminded MARTINEZ of his Miranda rights by reading them once more, as witnessed by Agent Baez. MARTINEZ agreed to continue the interview without the presence or aid of an attorney.

MARTINEZ said he illegally crossed into the United States yesterday afternoon approximately two hours before dusk. MARTINEZ admitted that he acted as a foot-guide for the five illegal aliens that crossed into the United States with him. MARTINEZ brought the group of illegal aliens across the border from Mexico, afoot through the mountains, at a location between Tecate and Tijuana, Baja California. MARTINEZ admitted prior knowledge that the five subjects were illegal aliens, and that he knew it was against the law smuggle them into the United States. MARTINEZ claimed he made arrangements with a smuggler to work as a foot-guide for this group of aliens, in lieu of paying a smuggling fee of $1,800.00 (USD). MARTINEZ said he would also be transported to Santa Ana, California, in exchange for guiding the five illegal aliens across the border. MARTINEZ was to take the aliens to a road where they would be picked up. MARTINEZ was told to call a number in Tijuana from his cellular phone when the group was ready to be picked up. A car would be sent to pick up the aliens.